UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEOBARDO MORALES-RAMIREZ,<br><br>Petitioner,<br><br>v.<br><br>M. ARVIZA,<br><br>Respondent. | No. 1:23-cv-00711-HBK (HC)<br><br>OPINION AND ORDER GRANTING RESPONDENT'S MOTION TO DISMISS[1]<br><br>(Doc. No. 20) |

Petitioner Leobardo Morales-Ramirez ("Petitioner"), a federal inmate, is proceeding pro se with his first amended petition for writ of habeas corpus under 28 U.S.C. § 2241, filed while he was incarcerated at Federal Correctional Institution (FCI) Mendota, located in Fresno County, California, which is within the venue and jurisdiction of this Court. (Doc. No. 4, "Petition"). The Petition raises three claims: (1) Petitioner is entitled to "immediate release" pursuant to accrued good time credit (GCT) pursuant to 18 U.S.C. § 3624(b)(1); (2) Petitioner is "entitled to a refund" of $500 for a "monetary fine" imposed by a disciplinary hearing officer; and (3) the Bureau of Prisons ("BOP") unlawfully excludes Petitioner from applying earned time credits (FTCs) because of his immigration status, in contravention of the First Step Act. (Doc. No. 4 at 6, 9-24); *see* 18 U.S.C. § 3632(d)(4)(A), (C) (providing that FTCs earned from completion of evidence-

---

[1] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. § 636(c)(1). (Doc. No. 28).

based recidivism reduction programs (EBBRs) and productive activities (PAs) shall be applied toward time in prerelease custody or supervised release).  Petitioner claims he has exhausted administrative remedies as to grounds one and two; however, he admits he did not exhaust his administrative remedies as to ground three, and argues exhaustion would be futile as he is challenging a BOP policy.  (*Id*. at 7, 19-21).

In response, Respondent filed a Motion to Dismiss ("Motion") with Appendix on November 21, 2023.  (Doc. Nos. 20, 20-1).  On December 26, 2023, Petitioner filed a motion "requesting to be properly served and notified of proceedings" indicating he did not receive a copy of the Motion.  (Doc. No. 21).  In an abundance of caution, despite the certificate of service that Petitioner was mailed a copy of the Motion, the Court directed Respondent to provide a duplicate copy of the Motion on January 16, 2024.  (Doc. No. 22).  On January 24, 2024, Respondent filed a certificate of re-service of the Motion.  (Doc. No. 24).  Petitioner did not file a response to the Motion, and the time for doing so has expired.  (*See* Doc. No. 5).  For the reasons set forth more fully herein, the Court grants Respondent's Motion to Dismiss.

## I. BACKGROUND

### A. Procedural History

Petitioner is currently serving a 240-month federal prison sentence for his 2006 conviction by a jury in the United States District Court for the District of New Mexico for conspiracy and possession with intent to distribute illicit drugs in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).  *See United States v. Delgado et al.*, 1:05-cr-00920-JB-2, Crim. Doc. Nos. 10, 31, 125, 150-52 (D.N.M.).[2]  Petitioner is currently incarcerated at FCI Mendota.  (Doc. No. 20 at 2).  According to BOP records, Petitioner has been determined ineligible to earn FTCs because he was convicted for possession with intent to distribute over one (1) kilogram of a mixture and substance containing a detectable amount of heroin under 21 U.S.C. § 841(b)(1)(A), which is listed under ineligible offenses as outlined in 18 U.S.C. § 3632(d)(4)(D).  (Doc. No. 20-1 at 119-20 (noting that convictions involving 100 grams or more of Heroin are precluding where, as here, the

---

[2] The undersigned cites to the record in Petitioner's underlying D-NM criminal case as "Crim. Doc. No. _.".

2

sentencing court found the offender was an organizer, leader, manager, or supervisor of other in the offense), 126).  Relevant here, BOP records further indicate that Petitioner is ineligible to apply FTCs because he is subject to a final order of removal under immigration laws pursuant to 8 U.S.C. 1101(a)(17) and 18 U.S.C. § 3632(d)(4)(E).  (*Id*. at 120).  Petitioner's current projected release date, including adjustments for possible good time credits is September 1, 2024.  (Doc. No. 20-1 at 115, 121).

## II. APPLICABLE LAW AND ANALYSIS

Under Rule 4, if a petition is not dismissed at screening, the judge "must order the respondent to file an answer, motion, or other response" to the petition.  R. Governing 2254 Cases 4.  The Advisory Committee Notes to Rule 4 state that "the judge may want to authorize the respondent to make a motion to dismiss based upon information furnished by respondent."  A motion to dismiss a petition for writ of habeas corpus is construed as a request for the court to dismiss under Rule 4 of the Rules Governing Section 2254 Cases.  *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990).  Under Rule 4, a district court must dismiss a habeas petition if it "plainly appears" that the petitioner is not entitled to relief.  *See Valdez v. Montgomery*, 918 F.3d 687, 693 (9th Cir. 2019); *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998).

### A. Exhaustion

"Federal prisoners [generally] are required to exhaust their federal administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court."  *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986); *see also Ward v. Chavez*, 678 F.3d 1042 (9th Cir. 2012).  The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement.  *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54-55 (1995).  Because exhaustion is not required by statute, it is not jurisdictional.  *Id*. (citing *Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc*., 811 F.2d 1209, 1223 (9th Cir. 1987)).  If petitioner has not properly exhausted his claims, the district court, in its discretion, may "determine whether to excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court."  *Id*.

Requiring a petitioner to exhaust administrative remedies (1) aids judicial review "by allowing the appropriate development of a factual record in an expert forum," (2) conserves "the court's time because of the possibility that the relief applied for may be granted at the administrative level," and (3) allows "the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings." *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983) (per curiam).  Dismissal is appropriate when a federal prisoner has not exhausted the administrative remedies made available by the BOP.  *See Quinonez v. McGrew*, 649 F. App'x 475 (9th Cir. 2016) (affirming district court's dismissal of a § 2241 petition where the petitioner "did not complete any level of the BOP's Administrative Remedy Program and there is no indication that his pursuit of those remedies would be futile").  However, the Court may waive the exhaustion requirement when administrative remedies are inadequate, irreparable injury may occur without immediate judicial relief, or exhaustion otherwise would be futile.  *Laing v. Ashcroft*, 370 F.3d 994, 1000-01 (9th Cir. 2004) ("[D]istrict court's habeas jurisdiction under 28 U.S.C. § 2241 is ordinarily reserved for instances in which no other judicial remedy is available.").

As to grounds one and two, Petitioner argues that he did not receive a response to his appeal to the regional director; thus, his claims should be "consider[ed] totally exhausted."  (Doc. No. 4 at 11).  Petitioner concedes that he did not present his third ground for relief through the BOP administrative remedy process; but argues because he is challenging a BOP policy and a "purely legal" question, any appeal would be futile.  (Doc. No. 4 at 7, 19-21).  Respondent generally argues that Petitioner did not exhaust administrative remedies for any of his claims.  (Doc. No. 20 at 1).  Regardless, the Court finds it would be futile for Petitioner to pursue further administrative remedies because Petitioner's grounds for relief have no merit.  *See Seriales v. Lizarraga*, 2019 WL 201524, at *4 (E.D. Cal. Jan. 15, 2019) (excusing exhaustion requirement because Petitioner's claims are without merit, and any attempt to exhaust would be futile); *Ahmed v. United States Bureau of Prisons*, 2024 WL 643514, at *5 (D. Ariz. Jan. 26, 2024).  Therefore, given the exhaustion dispute, the Court waives the exhaustion requirement and will turn to the merits of the Petition.

**B.  Ground One: BOP Calculation of Good Time Credit**

A federal prisoner challenging the validity or constitutionality of a conviction must bring a petition for writ of habeas corpus under 28 U.S.C. § 2255, but a petitioner challenging the manner, location, or conditions of the execution of that sentence is required to bring a petition for writ of habeas corpus under 28 U.S.C. § 2241.  *See Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000) ("Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court.").  To receive relief under 28 U.S.C. § 2241, a petitioner in federal custody must show that his sentence is being executed in an illegal, but not necessarily unconstitutional, manner.  *See, e.g., Clark v. Floyd*, 80 F.3d 371, 372, 374 (9th Cir. 1996) (contending time spent in state custody should be credited toward federal custody); *United States v. Jalili*, 925 F.2d 889, 893-94 (6th Cir. 1991) (asserting petitioner should be housed at a community treatment center); *Barden v. Keohane*, 921 F.2d 476, 479 (3rd Cir. 1990) (arguing BOP erred in determining whether petitioner could receive credit for time spent in state custody); *United States v. Brown*, 610 F.2d 672, 677 (9th Cir. 1980) (challenging content of inaccurate pre-sentence report used to deny parole).

Here, Petitioner claims the BOP's computation of his sentence unlawfully effects the length of his sentence.  Thus, the claim is proper under 28 U.S.C. § 2241 as it challenges the execution of Petitioner's sentence rather than the sentence's imposition.  *See, e.g., Schleining v. Thomas*, 642 F.3d 1242, 1244 (9th Cir. 2011) (upholding BOP's computation of good time credits and expected release date).  Under 18 U.S.C. § 3585, the Attorney General, through the BOP, is responsible for computing federal sentences.  *United States v. Wilson*, 503 U.S. 329, 333 (1992). "After a defendant is sentenced, the BOP is responsible for determining (i) the date the federal sentence 'commences'; (ii) whether the defendant should receive credit for time spent in custody before the sentence 'commenced'; and (iii) whether the defendant should be awarded credit for 'good time.'"  *Tompkins v. Graber*, 2015 WL 1536289, at *5 (D. Ar. Apr. 6, 2015) (citing 18 U.S.C. § 3585(a) and (b)); *Wilson*, 503 U.S. at 331-32 (BOP determines credit issues, not district courts)).  The BOP awards good time credit to prisoners pursuant to 18 U.S.C. § 3624(b)(1), as

follows:

> [A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations ... if the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate.

Petitioner argues that pursuant to § 3624(b)(1), he is entitled to 54 days of GCT for every year of his imposed sentence of 240 months (20 years) for a total of 1080 days, and after deducting GCT disallowance of 286 days for disciplinary sanctions on "8 occasions," he is left with 794 of good conduct time credit and "should have been released on Feb. 6, 2023." (Doc. No. 4 at 9-10, 12-13 (noting "[m]y sanctions reports made reference to some good time forfeit. A total of 318 if that sanction was to be applied I still should have 476 days remaining which would qualify me for release on Dec. 1, 2023.").  However, as noted by Respondent, BOP records show that Petitioner has not "displayed exemplary compliance with institutional disciplinary regulations." (Doc. No. 20 at 5).  With respect to the amount of good time credit Petitioner has earned, BOP determined Petitioner's sentence commenced on the date his sentence was imposed—August 10, 2006, and BOP gave Petitioner credit for his prior custody—April 11, 2005 through August 9, 2006, resulting in an original projected release date of September 12, 2022. (Doc. No. 20-1 at 40).  However, as attested to by a BOP Management Analyst, Petitioner has incurred a total loss of 859 days of GCT as a result of nine (9) disciplinary violations. (Doc. 20 at 5-6 (noting BOP accounting actually shows a cumulative loss of 956 days of GCT, but the "adjusted loss is only 859 because – following BOP Program Statement 5880.28 in the Sentence Computation Manual of 1984 – Petitioner may not lose more GCT days (in disallowance) than he may accrue in one accrual year"); Doc. No. 21-1 at 40-44).  Thus, Petitioner is currently eligible to receive a maximum of 221 days of GCT, resulting in a projected release date of September 1, 2024. (Doc. No. 20 at 5; Doc. No. 21-1 at 77).

The Court finds no error in the BOP's computations of Petitioner's GCT.  Accordingly, ground one of the Petition is denied on the merits.

**C. Ground Two: Monetary Fine**

Petitioner argues he is entitled to a refund of $500 in monetary fines imposed by a disciplinary hearing officer because the infraction did not involve destruction of government property. (Doc. No. 4 at 10). As an initial matter, the Court notes Petitioner does not assert any violation of his due process rights in connection with the disciplinary hearing, nor does he challenge the sufficiency of the findings by the disciplinary hearing officer (DHO), or the loss of any gain time imposed, only the monetary fine itself. (See *id*.). Thus, the Court finds Petitioner's request for reimbursement of the $500 monetary fine as a ground for relief here is not cognizable as a habeas claim. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (per curiam) (quoting 28 U.S.C. § 2254(a) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"); *see also Gonzalez v. Fed. Bureau of Prisons*, No. 3:14-CV-00887, 2014 WL 6770010, at *1 (M.D. Pa. Dec. 1, 2014), amended, No. 3:14-CV-00887, 2015 WL 224653 (M.D. Pa. Jan. 15, 2015) (recognizing that challenge to BOP monetary fine for disciplinary violation without challenge to loss of gain time not cognizable on habeas review).[3]

Regardless, the Court finds that Plaintiff's claim is without merit. First, Plaintiff fails to identify with specificity the infractions at issue, aside from noting that he was sanctioned with monetary fines on two occasions, for $200 and $300, respectively. (*See* Doc. No. 4 at 10). Respondent identifies these fines as sanctions imposed after DHO findings that Petitioner violated BOP Code 108 (Possessing a Hazardous Tool) and BOP Code 115 (Destroy/Dispose Item Subject to Search). (Doc. No. 20-1 at 5-10). Pursuant to 28 C.F.R. § 541.3, these violations are "Greatest Severity Level Prohibited Acts," and "available sanctions" for these "Acts" include up to twelve

---

[3] Courts within the Ninth Circuit have found subject matter jurisdiction under § 2241 where the monetary penalty was imposed as restitution or part of the judgment. *See Vondette v. Ives*, 2014 WL 657877, at *4 (C.D. Cal. Feb. 18, 2014) (collecting cases).

months of disciplinary segregation, forfeiture and withholding of earned statutory GCT (up to 100%), termination or disallowance of extra good time, loss of privileges, and, as relevant here, monetary fines.  (Doc. No. 20 at 7-8 (citing BOP Program Statement, No. 5270.09, *Inmate Discipline Program*, available at www.bop.gov/policy/progstat/5270_009.pdf)).

Petitioner generally argues that "[i]n accordance with Program Statement § 541.4(D), monetary fines are authorized only when there has been damages to U.S. Government property; and . . . [his] infraction never involved destruction of government property therefore the [$500.00] taken from [his] account [was] taken without cause and/or without [his] expressed permission."  (Doc. No. 4 at 10); *see* BOP Program Statement, No. 5270.09 at 15 ("**D) Make Monetary Restitution**. The DHO may direct that an inmate reimburse the U.S. Treasury for any damage to U.S. Government property that the individual is determined to have caused or contributed to.") (emphasis in original).  However, as argued by Respondent, "Petitioner erroneously conflates sanction limits for imposition of monetary *restitution* and imposition of a different sanction of a monetary *fine*."  (Doc. No. 20 at 8) (emphasis in original).  Here, in imposing sanctions for BOP Code violations, the DHO specifically explained that he was imposing monetary fines, as opposed to any monetary restitution.  (Doc. No. 20-1 at 24 (imposing $300 monetary fine for violation of BOP Code 115), 33 (imposing $200 monetary fine for violation of BOP Code 108)).  Thus, Plaintiff's argument, premised on an alleged direction by the DHO to reimburse for damages to U.S. Government property, is without merit.  The Court denies Petitioner relief on ground two of the Petition.

**D.  Ground Three: First Step Act**

The First Step Act ("FSA"), enacted December 21, 2018, provided for considerable changes to the federal criminal code, including several prison and sentencing reforms.  First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).  One such reform under the First Time Act entailed the implementation of Federal Time Credits ("FTCs").  18 U.S.C. § 3632(d)(4)(A).  Essentially, an inmate "who successfully completed evidence-based recidivism reduction programming or productive activities" "shall earn 10 days of time credits for every 30 days of successful participation."  *Id.*  These FTCs earned by eligible inmates are "applied toward time in

prerelease custody or supervised release." § 3632(d)(4)(C).

Additionally, the FSA authorized the BOP to use a risk and needs assessment system, "PATTERN," and designate a prisoner with a minimum, low, medium, or high-risk score. *United States v. DeCaro,* No. 2022 WL 4395905, at *1 n.1 (E.D. Mo. Aug. 23, 2022). Inmates who receive a minimum or low-risk score over two consecutive assessments earn an additional five days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming (EBRR programming) or productive activities (PAs). 18 U.S.C. § 3632(d)(4)(A)(ii); *Orihuela v. Engleman*, 2022 WL 18106676, at *1 (C.D. Ca. Nov. 3, 2022) ("A prisoner's PATTERN score may affect the rate at which he earns FTC for his participation in EBRRs and Pas.").

However, "[a] prisoner is ineligible to apply time credits under subparagraph (C) if the prisoner is the subject of a final order of removal under any provision of the immigration laws (as such term is defined in section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(17))." § 3632(d)(4)(E)(i). Petitioner argues that, in contravention of the FSA, the BOP is improperly excluding him from applying FTCs by "deeming a I-247A immigration detainer as a 'final order of removal.'" (Doc. No. 4 at 6, 14); *see Alatorre v. Derr*, 2023 WL 2599546, at *5 (D. Haw. Mar. 22, 2023) ("As a result of Change Notice 5410.01, federal prisoners subject to immigration detainers are no longer automatically prohibited from applying their earned time credits.").

Respondent has submitted evidence in the form of an affidavit from Charles Hubbard, Regional Correctional Programs Administrator, attesting that he personally reviewed and verified the existence of multiple Final Orders of Removal dated July 30, 1997, January 28, 1998, February 20, 1998, and January 11, 1999, obtained by the BOP through the Department of Homeland Security's Immigration and Customs Enforcement. (Doc. No. 20-1 at 120). Petitioner submits no evidence to the contrary that he is not under a Final Order of removal. Because Petitioner is subject to a final order of removal under immigration laws, he is statutorily ineligible to claim application of FTCs toward prerelease custody or supervised release. Therefore, the Court finds ground three of the Petition fails to state a claim for habeas relief.

Accordingly, it is **ORDERED**:

1. Respondent's Motion to Dismiss (Doc. No. 20) is GRANTED to the extent the Petition is DENIED on the merits.
2. The Clerk of Court is directed to terminate any pending motions and close this case.

Dated:   May 21, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE